O’MALLEY, Circuit Judge,
dissenting.
In its review of the arbitrator’s decision, the majority finds that, as a factual matter, “it is highly unlikely that one could have vertigo without some form of dizziness.” Maj. Op. at 992. The arbitrator, however, made no such finding. Though the parties vigorously debated the relationship between vertigo and dizziness — an issue central to the propriety of Ms. Emanuele’s suspension — the arbitrator left this fact dispute unaddressed. Because it is neither our role as a circuit court, nor within our jurisdictional competence, to resolve such fact disputes in the first instance, I must, respectfully, dissent. See Church of Scientology v. United States Postal Serv., 700 F.2d 486, 490 (9th Cir.1983) (remanding with instructions to “resolve the factual issues raised by the parties” because appellate courts do “not have the jurisdictional competence to resolve factual disputes”).
As the majority notes, this case turns on whether Ms. Emanuele experienced dizziness or fainting spells prior to 2008. One of Ms. Emanuele’s primary arguments before the arbitrator was that the agency failed to prove that she experienced dizziness because having a history of vertigo does not mean she had a history of dizziness. The agency pointed to no direct evidence that Ms. Emanuele had dizziness. Instead, its theory was that, because Dr. Pillai reported a history of vertigo, one could infer that Ms. Emanuele had dizzi *995 ness. Thus, to sustain the charge, the arbitrator needed to find that the agency proved, by preponderant evidence, that, because Ms. Emanuele had vertigo, she also had dizziness. The arbitrator made no such finding. Instead, he apparently presumed, that “vertigo” and “dizziness” are one in the same.[1] See, e.g., Arbitrator’s Decision at 9 (“Grievant has been less than agreeable in releasing medical documentation and failed to offer credible evidence that would support that she did not have a history of vertigo/dizziness as initially reported by Dr. Pillai.”). Consequently, he never resolved the factual dispute regarding the relationship between vertigo and dizziness.
Ms. Emanuele renews this argument on appeal, and the majority opinion addresses it as follows:
[Ms. Emanuele] argues that vertigo is not dizziness, citing Taber’s Cyclopedic Medical Dictionary, that states that “Vertigo is sometimes inaccurately used as a synonym for dizziness.” As the agency correctly concluded in its letter to Emanuele, “one could have dizziness without vertigo,” but it is “highly unlikely that one could have vertigo without some form of dizziness.” There is substantial evidence in the record to support the determination implicit in the arbitrator’s decision that vertigo is accompanied by dizziness.
Maj. Op. at 991-92 (citing JE4 (Agency’s April 2, 2010 Decision Letter)). The factual “determination” referred to by the majority, however, was made “implicitly” only in the sense that the agency could not prevail unless it persuaded the arbitrator to resolve the fact dispute raised by Ms. Emanuele in its favor. Because the arbitrator upheld Ms. Emanuele’s suspension, the majority concludes that the arbitrator must have determined that “vertigo is accompanied by dizziness.” As explained above, however, the arbitrator failed to acknowledge — let alone settle — the fact dispute regarding the relationship between vertigo and dizziness. Thus, because the arbitrator did not resolve this fact in the agency’s favor, the majority takes it upon itself to do so, and justifies its fact-finding by gleaning an “implicit” factual determination from the arbitrator’s ultimate legal conclusion. In doing so, moreover, the principal authority the majority cites for the relationship between vertigo and dizziness — a relationship that the agency was required to prove — is Tim Nelson, the agency official who proposed Ms. Emanu-ele’s suspension and made the ultimate decision to suspend her. Mr. Nelson’s statements, however, do not demonstrate that, as an empirical matter, it is “highly unlikely that one could have vertigo without some form of dizziness.” Rather, he simply stated that, based on a medical dictionary’s definition of vertigo and “a simple internet search,” “[he] f[ou]nd it highly unlikely that one could have vertigo without some form of dizziness.” JE4 at 1. As Ms. Emanuele points out, however, this conclusion is based on a misquotation of the definition of vertigo. While Mr. *996 Nelson quoted Taber’s Cyclopedic Medical Dictionary for the proposition that vertigo is “[s]ometimes used as a synonym for dizziness, lightheadedness, and giddiness,” the actual dictionary entry states that: “Vertigo is sometimes inaccurately used as a synonym for dizziness, lightheadedness, or giddiness.” See Taber’s Cyclopedic Medical Dictionary at 2327.
Based on its own factual finding that “it is highly unlikely that one could have vertigo without some form of dizziness” — a finding premised upon agency statements made without medical support — -the majority affirms the arbitrator’s decision upholding Ms. Emanuele’s suspension. “[W]e are a court of review,” however, “not of first view.” See Cutter v. Wilkinson, 544 U.S. 709, 719, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). Because the arbitrator never addressed the parties’ dispute over the relationship between vertigo and dizziness, and it is not our role, as circuit judges, to engage in fact-finding, I would remand the case to permit the arbitrator to consider the question in the first instance.

. Another possibility is that the arbitrator’s decision was premised on a misreading of Dr. Pillai's report. The arbitrator appears to have interpreted the report as stating that Ms. Emanuele had a history of both vertigo and dizziness. See Arbitrator's Decision at 4 ("Dr. Pillai described the Grievant’s medical history as containing bouts of vertigo, dizziness, blurred vision and nausea.”). Ms. Emanuele, however, disputes this interpretation of Dr. Pillai's December 18, 2008 report, and the section of the report titled "HISTORY of PRESENT ILLNESS” describes prior bouts of vertigo, but not dizziness. JE2 at 11. Dr. Pillai’s report references dizziness only in a section describing Ms. Emanuele’s symptoms in December 2008, which was well after Ms. Emanuele’s purported misrepresentations. Id.